## MATTER OF DAWSON

### In Exclusion Proceedings

### A–21010716

### *Decided by Board March 28, 1979*

(1) An applicant for recordation of lawful admission for permanent residence pursuant to section 214(d) of the Immigration and Nationality Act must comply with the adjustment procedures outlined in 8 C.F.R. 245.2(d).

(2) Before an application for benefits under section 214(d) warrants approval, the applicant must present competent evidence that a bona fide marriage was celebrated within 90 days of arrival and that he/she is otherwise admissible.

(3) An immigration judge in exclusion proceedings lacks jurisdiction to grant recordation of lawful admission for permanent residence pursuant to section 214(d), nor can he entertain any waiver of excludability which is submitted in connection with such application. *Matter of Dixon,* Interim Decision 2615 (BIA 1977) explained.

(4) Applicant for admission who had previously entered the United States as a nonimmigrant fiancee of a United States citizen whom she married within the prescribed 90-day period, but whose application for adjustment had been denied for lack of prosecution, held properly excludable on documentary as well as moral grounds on return from brief visit to Mexico.

EXCLUDABLE: Act of 1952—Section 212(a)(12) [8 U.S.C. 1182(a)(12)]—Alien who engaged in prostitution

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of a valid immigrant visa, reentry permit, border crossing card, or other valid entry document

ON BEHALF OF APPLICANT:
Michael Gene Dawson (Spouse)
1104 Avenue B
Cisco, Texas 76437

ON BEHALF OF SERVICE:
E.M. Trominski
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated October 14, 1977, the immigration judge ordered the applicant readmitted to the United States as a returning resident. See section 101(a)(27)(A) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(27)(A). In so doing, he granted her a section 212(h) of the Act, 8 U.S.C. 1182(h) waiver of inadmissibility under section 212(a)(12) of the Act, 8 U.S.C. 1182(a)(12), and held that the charge of inadmissibility under section 212(a)(20) of the Act, 8 U.S.C. 1182(a)(20), had not

been sustained. The Immigration and Naturalization Service has appealed. The appeal will be sustained.

The applicant is a native and citizen of the Philippines who was admitted to the United States on January 8, 1977, as a nonimmigrant fiancee of a United States citizen. See section 101(a)(15)(K) of the Act. She and her citizen fiance were married in Eastland, Texas, on February 14, 1977, within the 90-day period prescribed by section 101(a)(15)(K) and section 214(d) of the Act, 8 U.S.C. 1101(a)(15)(K) and 8 U.S.C. 1184(d). On April 12, 1977, the Immigration and Naturalization Service wrote to the applicant's husband, Michael Gene Dawson, requesting him to comply with the recordation requirements provided in the Immigration and Naturalization Service regulations. In response, the applicant filed Form I-485 (Application for Status as Permanent Resident) on April 29, 1977, with the District Director in San Antonio requesting recordation of lawful admission for permanent residence pursuant to section 214(d) of the Act. The application was denied on August 10, 1977, for lack of prosecution, after the applicant failed to appear for interviews, scheduled for June 28, 1977, and July 18, 1977, or to advise the Service of the reasons for her absence.[1] On September 17, 1977, Mrs. Dawson crossed the border into Mexico without her husband and attempted later the same day to reenter the United States. She was detained by immigration officials for lack of a proper reentry document and paroled into the country pursuant to section 212(d)(5) for a deferred exclusion hearing. Several days later, she was interviewed by Service officials under oath and admitted that she had practiced prostitution in the Philippines for approximately one year in 1973-1974. The Service has charged her with inadmissibility on both documentary and moral grounds.

Relying on the Board's most recent interpretation of section 214(d) requirements,[2] *Matter of Dixon*, Interim Decision 2615 (BIA 1977), the immigration judge concluded that Mrs. Dawson, having contracted a valid marriage with her United States citizen fiance, was not obliged to go through a formal adjustment of status process in order to acquire recordation of lawful admission for permanent residence. Under his theory, once a bona fide marriage is celebrated, the alien receives lawful

---

[1] According to the applicant's husband, they did not receive the notices of the interviews (Tr. at 6). Little additional comment was made on the matter, unfortunately. The file indicates only that the notices were mailed to the address given by Mr. Dawson on Form I-485 and at the exclusion hearing as his residence.

[2] Section 214(d) provides in pertinent part—

In the event the marriage between the said alien and the petitioner shall occur within three months after entry and they are found otherwise admissible, the Attorney General shall record the lawful admission for permanent residence of the alien and minor children as of the date of payment of the required visa fees.

permanent resident status automatically. Thus, in the applicant's case, the immigration judge concluded that—

> on February 14, 1977 as soon as the applicant married Mr. Dawson she at that point in time became a resident alien lawfully present in the United States. The request for medical checks and interviews were [sic] superfluous and the I–151, green card, should have been issued automatically upon presentation of evidence of the marriage without more. (Immigration judge's decision at 3.)

The immigration judge then held that the applicant is a lawful permanent resident, and that while she should have been issued appropriate documents reflecting that fact, the lack of them did not render her inadmissible under section 212(a)(20). He then granted a section 212(h) waiver of the prostitution ground of inadmissibility [3] and ordered her readmission to the United States.

On appeal, the Immigration and Naturalization Service argues that the immigration judge has misapplied *Matter of Dixon, supra,* and in so doing has granted relief in excess of his jurisdiction. Both contentions are unassailable. *Matter of Dixon* examined one issue—the validity of an earlier decision, *Matter of Harris,* Interim Decision 2336 (BIA 1974), in which the Board had held that neither a terminated nor a nonviable marriage could support recordation of lawful admission for permanent residence under section 214(d). In *Dixon,* we overruled *Harris,* concluding that the "viability" requirement applicable in adjustment of status under section 245 of the Act is not relevant in adjustment proceedings under section 214(d). At no point, however, did we suggest that the substantive and procedural requirements for section 214(d) relief are legally insignificant formalities. See *Dixon* at p. 4.

As the regulations implementing section 214(d) clearly indicate, a section 214(d) applicant must comply with adjustment procedures before recordation of lawful admission can occur. See 8 C.F.R. 245.2(d).[4] From the language of the statute itself, it is equally obvious that an

---

[3] Although the Service did not charge the applicant with visa fraud in connection with her 1976 application for a K–1 visa, the immigration judge, *sua sponte,* granted a waiver pursuant to section 212(i) of the Act in an apparent effort to immunize the applicant from any future difficulties in that regard.

[4] 8 C.F.R. 245.2(d) provides:

> An application for permanent resident status pursuant to section 214(d) of the Act shall be filed on Form I–485 with the district director having jurisdiction over the applicant's place of residence. A separate application shall be filed by each applicant. If the application is approved, the district director shall record the lawful admission of the applicant as of the date of approval. The fee previously paid for filing the application shall be considered payment of the required visa fees, as of the date of the approval of the application. The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. No appeal shall lie from the denial of an application by the district director but such denial shall be without prejudice to the alien's right to renew his application in proceedings under Part 242 of this chapter.

applicant not only must present competent evidence that a bona fide marriage was celebrated within 90 days of arrival but also that he/she is otherwise admissible before the application warrants approval. Only when these two statutory requirements are satisfied, does recordation become mandatory. Thus, while there is no discretionary element in 214(d) adjustment, as there is in adjustment of status under section 245 of the Act, there is nothing "automatic" about the process either. Compliance with the requirements of the statute and the regulations is not a formality, as the immigration judge has concluded.

In the case before us, it is clear that Mrs. Dawson had not satisfied either of the recordation requirements before she crossed the Rio Grande. First, although she appears to have contracted a valid marriage, documentary evidence of that fact—the marriage certificate—was not submitted with the Form I-485, apparently because it was not yet on file with state authorities (Tr. at 8). Second, the applicant's failure to appear at either of the scheduled interviews prevented immigration authorities from finding that she was otherwise admissible, e.g. that she was not within any of the classes of individuals who are excluded from admission under section 212(a) of the Act. We conclude, therefore, that the applicant has never been accorded the status of lawful permanent resident and that she is, therefore, not admissible to the United States as a returning resident under section 101(a)(27)(A). Inasmuch as an immigration judge lacks authority to grant recordation in exclusion proceedings, 8 C.F.R. 245.2(d), he is likewise without jurisdiction to entertain an application for any waiver which must be submitted concurrently with the recordation application in order to overcome an existing exlusionary ground. See 8 C.F.R. 245.1(f). Cf. *Matter of DeG—*, 8 I. & N. Dec. 325 (BIA 1959; A.G. 1959).

If the applicant wishes to pursue an application for section 214(d) benefits in accordance with the applicable regulations, she may request a stay of exclusion from the District Director pursuant to 8 C.F.R. 237.1. See generally, *Matter of C—H—*, 9 I. & N. Dec. 265 (R.C. 1961); *Matter of Wong*, 12 I. & N. Dec. 407 (BIA 1967).

ORDER: The appeal is sustained. The applicant is ordered excluded and deported from the United States to the Philippines pursuant to sections 212(a)(12) and 212(a)(20) of the Immigration and Nationality Act.